### In re NEW LOTS SASH & DOOR CORP.
### No. 24368.

District Court, E. D. New York.
May 29, 1933.

Weinstein & Levinson, of New York City, for alleged bankrupt.

Jacob Frummer, of Brooklyn, N. Y., for petitioning creditors.

BYERS, District Judge.

This is a contested bankruptcy proceeding and, in connection with the trial of the issues, a motion was heard upon which decision was reserved to permit Isidor Prussack, one of the petitioning creditors, to withdraw as such.

It will be convenient to dispose of that motion first.

Prussack asserts that he was induced to sign the petition by attorneys representing at that time one of the other petitioning creditors, who informed him that a certain assignment of the bankrupt's interests in claims against five fire insurance companies had been made to an individual who would distribute the amounts to be received on a preferential basis so that all of the creditors of the alleged bankrupt would not share pro rata therein; believing this representation, he was induced to sign the petition after the attorney in question had paid him about 50% of his claim, namely, $25.00 on account of the claim of $46.99.

The attorney testified that he purchased a share in Prussack's claim for the sum named.

The latter deposed that subsequent investigation disclosed that the terms of distribution under the assignment of the insurance policy claims were not as they had been represented to him and, although he had not returned the $25.00 so paid, he desired to withdraw as a petitioning creditor. It is found that his evidence fails to establish misrepresentation.

He testified that his claim was bona fide, and had been owing for upwards of a year at the time that the petition in bankruptcy was filed.

At most, there was disclosed a change of mind on the part of this petitioner, and no good reason has been shown why he should play fast and loose with legal proceedings in this court; if there had been any infirmity in his claim so that his status as a petitioning creditor could fairly be open to question, a different problem would be presented, but the record is otherwise. It is quite apparent that he wishes to withdraw in response to pressure which has been brought to bear by those who are concerned in avoiding the bankruptcy proceedings, in order that the assignment above referred to may not be subject to attack by a trustee as constituting a preference.

So far as Prussack is concerned, the court should leave him where it finds him, and consequently his motion is denied.

The acts of bankruptcy alleged in the printed form petition are as follows:

(1) That, while insolvent, the bankrupt, with intent to hinder, etc., its creditors and for the purpose of giving a preference contrary to the law, transferred $13,000.00.

(2) That, while insolvent, the bankrupt transferred $8,000.00 to various of its creditors, with intent to prefer them.

(3) That, while insolvent, the alleged bankrupt permitted a creditor to obtain a preference through legal proceedings, which has not been vacated within five days before

**571**

a sale or final disposition of the affected property.

No proof was offered in behalf of any of the foregoing.

(4) That the alleged bankrupt, while insolvent, permitted three of the petitioning creditors to obtain "through legal proceedings a (judgment) and did not vacate or discharge the same within 30 days from the date said judgment was obtained."

The answer denies that the principal place of business of the bankrupt for the greater part of the six months next preceding the filing of the petition was as stated in the petition. This denial was withdrawn at the trial, and insolvency of the corporation was conceded; further, the acts of bankruptcy as alleged in the petition are denied, except that it is admitted that Jean Winarick, a petitioning creditor, obtained a judgment against the bankrupt, and also that three other petitioning creditors did, but it is alleged that such judgments were not liens and therefore the judgment creditors did not obtain thereby any preference.

In a separate defense, it is alleged that the judgment creditors referred to in the petition should be estopped from alleging as an act of bankruptcy the obtaining of any judgment by them against the alleged bankrupt, or the obtaining by them through their own voluntary acts of any alleged preferences.

The judgments referred to are those specified in the fourth alleged act of bankruptcy.

An amendment was allowed on the trial, to include a judgment recovered in the Municipal Court of New York by D. Liederman Sons, Inc., for $138.72, on February 3, 1933, of which a transcript was filed with the clerk of Kings county on February 5th, execution being issued to the sheriff who returned it unsatisfied on February 28, 1933.

The Winarick judgment was recovered on or prior to January 24, 1933, and on that day execution was issued to the sheriff, and returned unsatisfied on March 24, 1933. The petition was filed April 21, 1933.

It is not contended that this judgment was vacated or discharged within thirty days from the time of the issuance of execution, but it is argued that the creditor did not obtain through legal proceedings any judgment or other lien; obviously the creditor did obtain a judgment, but the contention is made that there was no lien created in connection therewith because there was no property of the bankrupt to which the lien could attach, as is shown by the fact that the execution was returned unsatisfied.

The testimony is that there was a certain automobile truck which had a very small value ($100 or $150) and a damaged safe, both on the premises formerly occupied by the bankrupt, but which had been rendered untenantable by reason of a fire which occurred in 1932. The argument is that the issuance of execution on the Winarick judgment did not create a lien, and there could have been none unless levy had been made upon the property of the judgment debtor pursuant thereto.

The New York Civil Practice Act, § 679, provides that the goods and chattels of a judgment debtor not exempt are bound by the execution from the time of the delivery thereof to the proper officer, which means that the automobile truck and safe at least, assuming that there was no other personal property of the bankrupt, were subject to the lien of judgment on the date of issue of the execution to the sheriff.

In discussing the requirement of the Bankruptcy Act on this subject, in a case in which a petition was dismissed because a judgment antedated the four months' period, it was said by the Circuit Court of Appeals of the Second Circuit, in Elkay Reflector Corporation v. Savory, Inc., 57 F.(2d) 161 at page 162:

"It is contended that under the words of the amendment a 'judgment' within the four months' period is alone sufficient, but it seems plain that for a judgment to come within the spirit and meaning of the act it must be a judgment that has become a lien and as such a legal preference. So the Circuit Court of Appeals of the Third Circuit has held in Weitzel Flooring Corp. v. Getz, 31 F.(2d) 930."

The foregoing would perhaps justify disposing of this petition without further discussion, because it is so framed as to indicate that reliance is placed upon the judgment alone, as the word "lien" has been stricken; but the care which counsel have taken to argue the matter on broader grounds invites disposition of the controversy upon the issues so presented.

It seems clear that the lien of the Winarick judgment existed as to whatever personalty there was, within the four months here involved, and that no attempt was made to vacate or discharge it. If this were not so, a judgment debtor could defeat the lien by secreting his personal property so as to render it invisible to the sheriff, or the latter could defeat it by ineptitude of function.

Taubel-Scott-Kitzmiller Co., Inc., v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770, is not to the contrary. There section 67f of the Bankruptcy Act (11 USCA § 107 (f) was under construction, in a case where insolvency was not shown at the time the judgment in question was recovered. Here there is no such issue.

The lien of Mrs. Winarick's judgment had its inception when the execution was issued to the sheriff, and legally affected the truck, the safe and any other personal property of the judgment debtor, and would have been perfected, had the executing officer made a levy thereon, during the period permitted by law. Hathaway v. Howell, 54 N. Y. 97. The lien was never perfected, and therefore came to an end March 24, 1933, four weeks before the petition was filed.

■ Is such a lien, which had an existence in the eyes of the law, but otherwise was without substance, within the purview of subdivision (a) (4) of section 3 of the Bankruptcy Act, 11 USCA § 21 (a) (4)?

That section describes, as to its first four clauses of subdivision (a), preferential treatment of creditors; the first two aspects of such originate in the voluntary act of the alleged bankrupt, and the third and fourth are "passive" [In re Maryanov et al. (D. C.) 20 F.(2d) 939] but susceptible of becoming equally effective from the creditors' standpoint.

All of these provisions contemplate that the general creditors shall not be deprived of a pro rata share in the alleged bankrupt's property, or threatened with such deprivation.

Here the act relied upon, the suffering of the Winarick lien to exist for a 60-day period, had no preferential operation whatever. The life of the lien was a purely legal concept, and the general creditors, in. fact, have been deprived of nothing of value, through any act or omission of the bankrupt, nor, at the time of the filing of the petition, were they threatened with any such possibility. Had the lien been perfected, the act of bankruptcy would have been committed. Instead of this, the lien was not consummated, and to seek now to galvanize into being an expired possibility, and call it an act of bankruptcy, seems to be pressing the statute beyond its clear purpose. At least this decision will proceed upon that basis.

The Winarick judgment has been selected for attention as it is the most considerable in amount, but what has been said respecting it, covers the others asserted in the petition as supplemented.

■ The assignment of the claims against the insurance companies, representing practically all of the alleged bankrupt's property, has been much argued.

It is preferential as to certain creditors, but was made more than four months prior to the date of filing the petition. It is not in terms a general assignment for the benefit of creditors, and is not so pleaded in the petition.

Had it been desired to litigate the instrument as a constructive general assignment, proof would have been offered as to what properties pertained to the bankrupt in October, 1932, when the instrument was executed and delivered; the petitioners proved two items of personal property at least, which were not covered by it. Careful consideration has been given to the interesting discussion of this subject contained in the briefs of both counsel, but it will suffice to say that, had the petitioners seriously intended to characterize this transaction as a general assignment for the benefit of creditors, they had ample time in which to frame and file a petition on that theory, after knowledge of the facts and within the four months' period.

The failure to comment upon certain unsavory aspects of the proceedings does not mean that they have been overlooked.

Upon the whole case, it is deemed that the acts of bankruptcy alleged in the petition have not been proved. Proceeding dismissed.

Settle order.