In the Matter of the Supplementary Proceedings: STATE TAX COMMISSION OF THE STATE OF NEW YORK, Judgment Creditor, *v.* IRVING ROTHENBERG and EVELYN ROTHENBERG, Judgment Debtors.

(MANUFACTURERS TRUST COMPANY.)

Supreme Court, Special Term, New York County, February 11, 1938.

*John J. Bennett, Jr., Attorney-General [J. A. Ross* of counsel], for the judgment creditor.

*McManus, Ernst & Ernst* and *Joseph Siegel [Terence J. McManus* of counsel], for the judgment debtors, appearing specially.

PECORA, J. This is an application by the State Tax Commission as a judgment creditor against certain banks and trust companies which have moneys belonging to Samuel J. Weiss and Jessie C. Weiss, David Goldberg and Pauline Goldberg, Irving Rothenberg and Evelyn Rothenberg, Eli Friedman and Sylvia Friedman and Donnie Frocks, Inc., a corporation. The purpose of the application is to compel these banks and trust companies to pay over deposits belonging to the debtors for income taxes and franchise taxes assessed against them pursuant to warrants under section 380 of the Tax Law as to the individuals, and section 219-e as to the taxes due from the corporation. The application evidently is pursuant to section 794 of the Civil Practice Act, which provides that if notice of the application for payment sufficient in substance to constitute due process of law shall have been given, and if the person or corporation indebted to the judgment debtor shall not, by affidavit or other proof, show such facts as may be deemed by the court sufficient to entitle him or it to a trial of the issues, the court may make an order in its discretion directing such person or corporation to make such payments, and such an order shall be enforcible as a judgment. Pursuant to this section the State Tax Commission has given notice both to the debtors and to the banks.

One of the latter opposes the application on grounds which perhaps are not very serious and which might be met by the judgment creditor. The important opposition, however, comes from the judgment debtors themselves, who claim that the entire supplementary proceedings were irregular. They have made cross-motions to set aside all proceedings supplementary to judgment, and to stay all proceedings on the part of the State Tax Commission. The objecting parties, judgment debtors, have confined their argument principally to the invalidity of the third party orders, and have only slightly touched upon the question of the validity of the warrants themselves, although in all cases they have only put in a special appearance. Enough is shown in the papers to challenge the validity of the warrants themselves. I shall first examine the latter question. Only if the warrants are found to be valid, will it be necessary to consider fully the propriety of the third party orders in these cases.

The authority of the State Tax Commission to issue warrants for the non-payment of taxes, which warrants when filed with the county clerk assume the character of a docketed judgment, is found in section 380 of the Tax Law in its application to personal income taxes, and in section 219-e in its application to corporate franchise taxes. While the intention of section 380 appar-

ently was to make the section as applicable to individuals parallel with those applicable to corporations, nevertheless there are certain discrepancies.

For the sake of simplicity I shall first consider section 380, which involves all the motions, except the two dealing with Donnie Frocks, Inc. That section, in its amended form, was adopted by chapter 552 of the Laws of 1937. It was evidently intended to meet the difficulty of the situation in *Matter of State Tax Commission* v. *Ison* (276 N. Y. 584). While there is no opinion in the case, my references to it are gathered from the reading of the printed record and briefs. In that case a warrant was issued pursuant to section 380 as it existed prior to 1937. That section then authorized the issue of a warrant only if the tax was not paid within sixty days after it became due. The various steps adopted by the State Tax Commission in the *Ison* case to meet the difficulties of that clause need not be mentioned. It is plain, however, that much less than sixty days had elapsed since the time of the notice and the time of the warrant. The Tax Commission attempted to argue that the deficiency for which the taxpayer was liable was known by him in 1934. If so, it evidently was known in his own consciousness but not by the State Tax Commission, which only discovered it two years later. Thus, without going into any lengthy discussion of the facts in that case, it is apparent that the effect of the vacating of the warrant was to indicate that the court required as a condition precedent for the issuing of a warrant, notice to the taxpayer and a lapse of sixty days within which to make good the deficiency. That notice was deemed necessary is evident from the fact that the court disregarded the argument of the State Tax Commission, that when a taxpayer deliberately understated the amount of his liabiilty it was not necessary for him to receive notice of the demand for an additional tax, and that the  apse of sixty days from the time the taxpayer filed his return automatically authorized the issuing of a warrant without notice.

Evidently the Legislature regarded sixty days as an unusual period of grace to allow in all cases. In that time a fraudulent taxpayer might conceal and divert his assets beyond the reach of the authorities. Accordingly, section 380 was amended to read in part as follows: " If any tax imposed by this article, required to be paid at the time a return is filed, or any portion of such tax, be not so paid, or if an assessment of a tax be made by the Tax Commission and notice thereof given as required by this article, or if any installment of a tax be not paid within thirty days after the same becomes due, the Tax Commission may issue

a warrant under its official seal directed to the sheriff of any county of the State commanding him to levy upon and sell the real and personal property of the person owing the same, found within his county, for the payment of the amount thereof, with the added penalties, interest and the cost of executing the warrant, and to return such warrant to the Tax Commission and to pay to it the money collected by virtue thereof, by a time to be therein specified, and not less than sixty days from the date of such warrant. In case the Tax Commission shall find that the collection of a tax would be jeopardized by a delay of thirty days as afore-provided, it may issue its warrant within said period."

The amended section has done away with the necessity of waiting sixty days for the payment of a tax before a warrant may be issued, but it has not dispensed with the necessity of notice. This may be inferred from the following analysis:

The additional tax obligation of the judgment debtors may be considered either as a tax " required to be paid at the time a return is filed," or it may be considered as an assessment as to which notice must be given " as required by this article." The reference to notice clearly connects the statute with section 377. That section provides that the taxpayer must, at the time of filing the return, pay to the Tax Commission the amount of tax shown by such return. There is no claim in the instant case that there has been a failure to pay that amount. It then provides for an audit of the taxpayer's return. Three situations are there considered. *First,* where a clerical error has been made and the amount due has been understated by the taxpayer. In that event the taxpayer must pay the excess within ten days after the amount of the tax, as computed, shall be mailed by the Tax Commission. He may pay this excess without interest or penalty within ten days after notice. If payment is not made within the ten days, interest is added at the rate of one per cent per month from the date of the notice, and a five per cent penalty based upon the amount of the deficiency. The *second* situation is one where the understatement is due to negligence. In that case five per cent of the deficiency is added as a penalty together with interest at the rate of one per cent from the date the tax was originally due. The *third* situation is one where the understatement is false or fraudulent with intent to evade the tax. In that case the tax on the additional income taxable is doubled and one per cent is added to the amount due for each month from the date the tax was originally due to the date of payment.

The three situations mentioned are all referred to in section 388, subdivision 3, of the Tax Law. The grouping of the several

instances in one paragraph would seem to indicate that notices of the additional amount due requires a mailing of the notice of the amount due as computed by the Tax Commission. The taxpayer cannot read the mind of the Commission and decide whether or not he is being held liable for penalties and interest by reason of fraud or by reason of negligence. The determination of the fact is what constitutes the assessment of a tax as it is referred to in the third line of section 380. It is not, in the technical sense, the tax " required to be paid at the time a return is filed," because such a tax is payable as provided by section 377, subdivision 1, in the amount shown by the return itself and not in the amount as redetermined after an audit. Since the additional tax is of the nature of an assessment, as to which, by the specific language of section 380, notice must be given as provided by this article, it would seem to mean that the Tax Commission may not issue a warrant until notice of the additional assessment is given to the taxpayer, as required in section 377.

If an understatement is due to clerical error, the statute specifically gives a taxpayer ten days to pay the additional assessment without penalties. If the assessment is due to negligence or fraud, it is debatable whether ten days' notice is imperative. However, a notice of some kind to pay within a reasonable time should be given. The taxing authorities should not issue a warrant, enter what is tantamount to final judgment, and have the sheriff seize the taxpayer's property without notice of his additional liability. Such a procedure is not due process of law.

I am aware of the objection that it is necessary to have some procedure which will prevent an alleged wrongdoer from concealing his property as a result of a notice of the additional assessment. To circumvent this, statutes are available to the State as well as to private individuals to secure itself by a process analogous to attachment. But this is a far cry from the method adopted here, of entering final judgment without notice and attempting thereupon to seize the taxpayer's property summarily, without giving him an opportunity to protect it by a bond or in some other manner.

A similar line of argument applies to the situation in the Donnie Frocks cases to which section 219-e of the Tax Law is applicable. In such cases virtually every report requires an audit by the Tax Commission and a statement by the Commission of the amount due as franchise tax. The amount found to be due from Donnie Frocks, Inc., is undoubtedly in the nature of a tax assessment as to which notice must be given and which the taxpayer has thirty days' time to pay before the warrant may be issued in a manner parallel to the one specified in section 380 of the Tax Law. True,

that in case of the possibility of jeopardy to the rights of the State in the delay of thirty days, a warrant may be issued in a shorter time, but even so the notice of assessment is not dispensed with.

In the instant case as well as in the companion cases considered, the reaudit was completed about December 31, 1937, and a third-party order was issued January 4, 1938, without any proof of the notice of assessment or requirement to pay it given by the Tax Commission. It is not necessary to recite here how much time less than ten days would have constituted reasonable notice. It is sufficient to decide that the absence of notice makes the issue of the warrants void, and invalidates all subsequent proceedings.

Since the warrant of attachment is void by reason of lack of notice, the motion of the Commission to compel the third parties to pay over the amounts of the deposits in the banks must be denied. Nothing further need, therefore, be said about the validity of the third party orders. But one other point suggested by the language of section 380 must be mentioned, because the looseness of draftsmanship is bound to cause confusion and loss to the State. It is provided in that section that the money collected by virtue of the warrant must be returned " not less " than sixty days from the date of such warrant. If the sheriff holds money belonging to the State tax authorities, why should he be prohibited from remitting it at a time not less than sixty days from the date of the warrant? Shall we justify it by saying that the minimum period of sixty days is intended to insure the sheriff's diligence and persistence in attempting to collect from the debtor? That answer is hardly satisfactory. The statute permits any other officer or employee of the department to collect an execution in a manner like that of the sheriff. Consequently, if the latter is not diligent or persistent, the specialist of the department may have much more success. Furthermore, the failure to make the return only after sixty days have elapsed makes it difficult for the Tax Commission to proceed with its remedies supplementary to execution.

Section 380 contains a provision that if a warrant be returned not satisfied in full, the Tax Commission shall have the same remedies to enforce the claim for taxes as if the People of the State had recovered judgment against the taxpayer for the amount of the tax. This provision makes it doubtful whether the State may proceed with its steps supplementary to execution unless the warrant has been satisfied in full, and this knowledge it cannot have officially until sixty days have elapsed from the time of the issue of the warrant. This is the chief basis of the argument of the judgment debtors against the validity of the supplementary proceedings prior to the expiration of sixty days from the warrant.

I do not find it necessary to pass upon the validity of the objection, but I make the observation in order to express my surmise that when the statute used the expression "not *less* than sixty days" it meant the very opposite, namely, not *more* than sixty days. In ordinary executions as described in section 640 of the Civil Practice Act the sheriff is required to make a return *within sixty days* after the receipt thereof. In other words, sixty days is made the maximum time within which the sheriff is permitted to hold it, and not the minimum time as stated in section 380 of the Tax Law. In fact, upon the argument in the *Ison* case the State Tax Commission argued that the expression in the Tax Law was intended to mean *within* sixty days and not *beyond* sixty days. However, the express language of the statute cannot be disregarded as to the sixty-day provision; if the intention of the Legislature was, as I have indicated, to provide for a sixty-day maximum limit, that fact should be embodied in appropriate language,.

An additional point that should be corrected is the statement that after the return of execution partly unsatisfied the State shall have the remedies which an ordinary judgment creditor has. Why was it necessary specifically to refer to the period after the return of execution if it was intended to give the State the same remedies in supplementary proceedings as a private judgment debtor? The latter may begin at once with his supplementary proceedings after the entry of judgment, not only before the return of execution but even where no execution has been issued. Why, if it was intended to give all the privileges that a private judgment creditor has to the State, was not that fact stated instead of the mere fragmentary reference to a situation where the return is unsatisfied?

Finally, to indicate another example of careless draftsmanship, why was it necessary to say in section 380 of the Tax Law that the amount of the warrant docketed shall become a lien upon the title to and interest in real property or chattels real of the person against whom it is issued? That statement might indicate a limitation of the lien to real or quasi real property, when the intention must have been to make the warrant so docketed a lien against all property. The best evidence of this intention is section 219-e which deals with delinquent franchise taxes of corporations and which was intended to parallel so far as possible section 380. In section 219-e it is provided that the amount of the warrant docketed shall become a lien upon and shall bind the "real and personal property and chattels real of the corporation against which it is issued in the same manner as a judgment duly docketed in the office of such clerk." That section 219-e expresses the real intention of the lawmakers in that respect and not section 380 is evidenced by the fact

that in the case of a private judgment creditor the personal property as well as real property is bound from the time of the issue of execution. (Civ. Prac. Act, § 679; *Matter of New Lots Sash & Door Corp.*, 3 F. Supp. 570.)

While I am directing the warrants to be vacated, I consider the situation serious enough to justify a stay pending an application to the Appellate Division for a further stay if the State Tax Commission decides to prosecute an appeal. The effect of the stay will be to continue the injunction against the third party banks which are indebted to the judgment debtors and to stay the vacating of the several warrants. My reason for granting the stay is that the judgment debtors should not have the opportunity to withdraw the moneys from the several depositories before the State Tax Commission has the opportunity to take the necessary steps to protect the rights of the People. It is particularly important here that the rights of the People should not be impaired, because the several parties, judgment debtors herein, are under a criminal indictment for conspiracy for violation of the provisions of the tax laws under which they have been assessed the additional penalties.

Cross-motions of the judgment debtors to vacate the proceedings herein, including the warrant, are granted. Motion to the State Tax Commission to direct third parties to pay the amount of their indebtedness is denied, with a ten-day stay to both parties as specified in this memorandum.

Settle order on one day's notice.